IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROBIN QUIGG, on behalf of**
**WILLIAM ADAMS, a minor,**

      Plaintiff,

vs.                                   Civ. No. 03-472 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision filed October 3, 2003. Docket No. 15. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is not well taken and will be denied.

**I. PROCEDURAL RECORD**

Plaintiff, Robin Quigg, ("Plaintiff") filed an application for Supplemental Security Income for her son, William Adams ("William") on January 17, 2001. Tr. 88. Plaintiff alleges that William has been disabled since June 14, 1993 or January 10, 2001 due to bi-polar disorder, attention deficit disorder, oppositional defiant disorder and asthma. Tr. 88 and 95. Plaintiff's application was denied at the initial and reconsideration level.

The ALJ conducted a hearing May 8, 2002. At the hearing, the Plaintiff was represented by counsel. On August 5, 2002, the ALJ made the following conclusions according to the sequential

1

analysis set forth in 20 C.F.R.§ 404.924(a)-(d) and Walker v. Apfel, 141 F.3d 852, 853 (8th Cir. 1998): the claimant has not engaged in post-onset substantial gainful activity since the alleged onset of disability; the claimant has a severe impairment; the "listings" potentially applicable to William's impairments are Sections 112.04, 112.08 and 112.11; the limitations resulting from the effects of the impairments, either singly or in combination, have not been of such severity as to medically meet or equal any condition in the "listings"; and the claimant's impairments, either singly or in combination, have not been functionally equal to any condition described in the "listings."  Tr. 15-26.

The Plaintiff filed a request for review of the ALJ's decision. On March 26, 2003, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr.7. The Plaintiff subsequently filed his Complaint for court review of the ALJ's decision on April 16, 2003.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Sisco v. United States Dep't. of Health & Human Servs., 10 F.3d 739, 741 (1993).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order for an individual under the age of 18 to qualify for disability insurance benefits a sequential evaluation process is used which is comparable to the five step sequential evaluation used for benefits for adults. 20 C.F.R. §416.924(a). The first step is a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. §416.924(b). The second step involves a determination of whether the impairment, or combination of impairments, is "severe." 20 C.F.R. §416.924(c). The last step involves a determination whether the child has an impairment or impairments that meet a "listing." 20 C.F.R. §416.924(d).

If a claimant does not meet the requirements for a "listiing," he may equal them if the child's functional limitations in a number of areas are impaired. There are six domains of functioning to determine functional equivalence: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) ability to care for one's self; and 6) health and physical well being. 20 C.F.R. §416.926a(b)(1)(i) through (vi). A child's impairments functionally equals a "listing" if he has extreme limitations in one area of functioning or marked limitations in two areas of functioning. An extreme limitation is characterized as no meaningful functioning in an area. A marked limitation is characterized as a limitation that is more than moderate but less than extreme. 20 C.F.R. §416.926a(C)(3). It is a limitation that seriously interferes with a child's ability to independently initiate, sustain or complete activities.

### III.  MEDICAL EVIDENCE

The only serious physical impairment that William has is asthma. The medical and school records subsequent to January of 2001 show that Adams' asthma has been well-controlled. William's primary impairments are mental. The record demonstrates that he has been diagnosed with several types of affective, personality, and attention deficit disorders.

In June of 1999, William was diagnosed with repressive, oppositional and attention deficit hyperactive disorders ("ADHD"). The record is not clear as to the underlying incident. Either Adams held a knife to his own chest or attacked his sister with a knife. Tr. 177-179, 192.

In May of 2000, William was diagnosed with ADHC and an unspecified depressive disorder. William's parents brought him to a hospital emergency room after William had an altercation with his sister and threw a tantrum. He was admitted by Dr. Larry White for one day of inpatient treatment. During his examination, Dr. White reported that William was cooperative and pleasant. William acknowledged getting out of control and that he had frequent feelings of anger and frustration. William also acknowledged that he usually felt happy and enjoyed friends and school. Except for immature judgment and impulsive behavior, Dr. White reported normal mental and cognitive functioning. He rated Adam's overall Global Assessment of Functioning ("GAF") at 50-55.[1] Dr. White opined that William's prognosis was "good." Tr. 177-179.

In May of 2000, William was suspended from school for a week. He became very defiant and refused to do any classwork. A multidisciplinary team at the school evaluated him to determine his needs for a specially designed instruction. In his IQ test, Adams scored a 96 in reading and a 104 in mathematics. The team noted his weaknesses in the behavior areas, and concluded he met the eligibility category of seriously emotionally/behaviorally disturbed and needs a specifically designed instructional program. Tr. 185-186, 192-200.

---

[1]The GAF is used to report"the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994). A rating of 41-50 indicates serious symptoms or any serious difficulty in social, occupation, or school functioning.  A rating of 51-60 indicates moderate symptoms or moderate difficulty in social, occupation, or school functioning.

In July of 2000, William was hospitalized for eight days due to increasing tantrums. William was oppositionally defiant during the first days of his hospitalization but his behavior significantly improved beginning the fifth day. He was discharged with diagnosis of major depression, ADHD and possible bipolar disorder. Dr. White rated William's GAF at 55. Tr. 201-202.

In November of 2000 William was admitted to a residential treatment and education program at Children's Treatment Center in Albuquerque, New Mexico. He was diagnosed with bipolar disorder, oppositional defiant disorder and a GAF in the range of 31-40.[2] On April 20, 2001, Dr. White found that William's condition had improved with only one significant episode of aggressive behavior. Tr. 324. He was discharged in August of 2001. Dr. Leslie Dozzo, a clinical psychologist, noted that William's suicidal and homicidal ideation had subsided completely, that he was no longer having tantrums, and he was able to control his impulsive behavior with anger management and coping skills. Tr. 255, 306-308.

The record contains notes from other physicians and counselors who have treated William in 2001 and 2002. William saw Dr. Renee Gonzalez, an associate of Dr. White in February of 2002. Dr. Gonzales prescribed various mediation and reported that William was doing well and not having any problems. Tr. 423. Dr. Kenneth Bull examined Adams in March of 2002 and reported an essentially normal mental status exam. He rated William's GAF at 80 currently and for the past year.[3]

---

[2] The DSM-IV states that a rating of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.

[3] The DSM-IV states that a rating of 71-80 indicates that if symptoms are present they are transient and expected reactions to psychosocial stressors resulting in no more than slight impairment in social, occupation or school functioning.

Tr. 412.

## IV. DISCUSSION

Plaintiff asserts that the ALJ's findings that William did not meeting "listings" 112.08, 112.11 and that William's impairments did not cause limitations that are functionally equivalent to the limitations found in any listed impairment are not supported by the substantial evidence and are contrary to law.

Relevant time period.

Plaintiff protectively filed for benefits on January 10, 2001 and alleged William had been disabled since either January 10, 2001 or June 14, 1993. Tr. 87-90 and 95. To qualify for benefits a claimant must be found disabled during the pendency of the application. Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991). Plaintiff is correct that the Commissioner may consider medical evidence prior to the time that the claimant alleges he is disabled. 20 C.F.R. §416.912(d)(2). Indeed in this case, the ALJ specifically referred to medical evidence from 1999 to 2002. However, as discussed below, the ALJ found that William improved after he received residential treatment in 2000 to 2001. Thus, "the ALJ did not err by giving greater emphasis to the more recent evidence as it was more probative of the issue before the ALJ." Id. at 528.

Listing 112.11.

Listing 112.11, ADHD, requires that the claimant meet both "A" and "B" criteria. The "A" criteria requires medically documented findings of marked inattention, impulsiveness and hyperactivity. The "B" criteria requires a marked impairment in age-appropriate functioning in at least two of the following: 1) cognitive/communicative function, 2) social functioning, 3) personal

functioning, and 4) concentration, persistence or pace. 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§122.02(b)(2), 112.11. To meet a listing, William must meet all of the specified criteria of the "listing." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ found that William did not show a marked degree of inattention, impulsiveness or hyperactivity. Tr. 22. This finding is supported by the substantial evidence in the record. The relevant inquiry is William's condition since he applied for benefits in January of 2001. As the ALJ noted, Adams had shown signs of these characteristics but William has "demonstrated a capability to control impulsive behaviors, attend to tasks, cooperate with testing, and behave calmly with the proper guidance, treatment, and attitude on this part." Id. After William was treated at the Children's Treatment Center, his behavior improved significantly. Tr. 306. On July 11, 2001, Leslie Dozzo, PH.D., reported that William's mood and attitude were normal and his thought processes were local and organized. School records after William's treatment showed that Willim continued to have some problems but brought them under control more quickly. Tr. 280. On March 25, 2002, Dr. Bull reported that William's GAF score was 80. Tr. 412.

Plaintiff argues that William had marked impairment in social functioning and concentration, persistence, or pace. Again, after William received inpatient treatment at the Children's Treatment Center, his condition improved. He was able to establish and maintain friendships with peers and adults. Tr. 275. His thought processes were logical and organized. Tr. 301.

Listing 112.08.

Plaintiff asserts that William's oppositional defiant disorder meets the requirements under Listing 112.08. The "A" criteria are met when there is:

Deeply ingrained, maladaptive patterns of behavior, associated with one of the following:

      1.      Seclusiveness or autistic thinking; or
      2.      Pathologically inappropriate suspiciousness or hostility; or
      3.      Oddities of thought, perception, speech, and behavior; or
      4.      Persistent disturbances of mood or affect; or
      5.      Pathological dependence, passivity, or aggressiveness; or
      6.      Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or
      7.      Pathological perfection and inflexibility.
20 C.F.R. Pt. 404, Subpt. P., App. 1, §112.08.

The "B" criteria are the same as discussed above. Id. at 112.02(b)(2).

The ALJ found that William had been diagnosed with an oppositional defiant disorder. However, the ALJ correctly noted that William did not have the deeply ingrained behavior patterns as required under the "listing" and his condition improved with treatment. Tr. 22. Again, the medical evidence demonstrates that William's "inappropriate behaviors have generally resolved with treatment, and he has demonstrated the capability to function quite well with proper guidance and a cooperative attitude." Tr. 22. After treatment William's GAF was found to be 51-60 and 80. The record supports the ALJ's findings.

<u>Functional equivalence</u>.

Plaintiff asserts that William had a extreme or marked limitation in the domain of interacting and relating to others. This domain pertains to a child's ability to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. §416.92a(i).

The ALJ correctly noted that the evidence was "equivocal." Tr. 24. However, the ALJ also correctly noted that after his treatment at the Children's Treatment Center, "he had no more temper tantrums and was able to control his impulsive behaviors." Id. Plaintiff notes that William's GAF

8

score was 35 upon discharge from the treatment center. Again, the ALJ addressed this and found that this score with inconsistent with the record. Tr. 19. William's GAF score was 51-60 less than one month earlier and his subsequent score was 80. The ALJ properly resolved the conflict in the record. Casias v. Secretary of HHS, 933 F.2d 799, 801 (10th Cir. 1991).

Finally, Plaintiff asserts that William had a marked limitation in the domain of attending and completing tasks. This domain pertains to a child's ability to focus and maintain attention, and how well the child begins, carries through, and finishes activities, including the pace at which he performs the activities and the ease with which he changes them. 20 C.F.R. §416.926a(h). The record shows that William demonstrated the ability to pay attention and complete tasks. Moreover, William's concentration had been shown to be intact. Tr. 24.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**